UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS RODRIGUEZ MENA,<br><br>                Plaintiff,<br><br>v.<br><br>ALEX LARSON SCHULTZ, OVERHERE LIMITED, CLINTON SO, and TUAH THE MOON FOUNDATION,<br><br>                Defendants. | Case No. 1:24-cv-08695-ERK-CLP |

**MEMORANDUM OF LAW IN SUPPORT OF ALEXANDER ESCOBAR'S MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF AND
<u>APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**Table of Contents**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.  PRELIMINARY STATEMENT ........................................................................................ 4

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 5

    A.  The Defendants ........................................................................................................ 5

    B.  The Sale of $HAWK Tokens Is Alleged to Damage Investors ............................... 5

    C.  Defendants' Alleged Violations of the Securities Act ............................................. 7

    D.  Procedural History .................................................................................................. 8

III.  ARGUMENT ...................................................................................................................... 8

    A.  Movant Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff .. 8

        1.  The Lead Plaintiff Framework Under the PSLRA ..................................... 8

        2.  Movant Has Satisfied the PSLRA's Procedural Requirements .................. 9

        3.  Movant Has the "Largest Financial Interest" in the Relief Sought by the Class ............................................................................................................ 9

        4.  Movant Satisfies the Typicality and Adequacy Requirements of Rule 23 11

    B.  Movant's Selection of Wolf Popper and Burwick Law to Serve as Co-Lead Counsel Should Be Approved ................................................................................ 12

IV.  CONCLUSION ................................................................................................................. 14

WORD COUNT CERTIFICATION ........................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*Balestra v. ATBCOIN LLC*,
  380 F. Supp. 3d 340 (S.D.N.Y. 2019) ...................................................................................... 10

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ................................................................................... 10, 11, 12

*Ford v. VOXX Int'l Corp.*,
  No. CV 14-4183 (JS)(AYS),
  2015 U.S. Dist. LEXIS 92705 (E.D.N.Y. Apr. 13, 2015),
  *adopted by* 2015 U.S. Dist. LEXIS 92646 (E.D.N.Y. July 16, 2015). ..................................... 10

*Hunter v. Blue Ridge Bankshares, Inc.*,
  346 F.R.D. 16 (E.D.N.Y. 2024) ..................................................................................... 10, 11, 12

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715,
  1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997) .......................................................... 10

*Martinek v. AmTrust Financial Services, Inc.*,
  No. 19-cv-08030-KPF, ECF No. 111 (Final Judgment) (S.D.N.Y. Nov. 16, 2022) ................. 13

*Martinek v. AmTrust Financial Services, Inc.*,
  No. 19-cv-08030-KPF,
  2022 U.S. Dist. LEXIS 209097 (S.D.N.Y. Nov. 16, 2022) ...................................................... 13

*Oberlander v. Coinbase Glob. Inc.*,
  No. 23-184-cv,
  2024 U.S. App. LEXIS 8200 (2d Cir. Apr. 5, 2024) .................................................................. 8

*Pinter v. Dahl*,
  486 U.S. 622 (1988) .................................................................................................................... 8

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*,
  No. 2:09-cv-01713, ECF No. 230 (Transcript) at 19:14-17 (E.D.N.Y. July 24, 2014) ............ 13

*SEC v. Grybniak*,
  No. 20-CV-327(EK)(MMH),
  2024 U.S. Dist. LEXIS 172840 (E.D.N.Y. Sept. 24, 2024) ....................................................... 7

*SEC. v. W.J. Howey Co.*,
  328 U.S. 293 (1946) .................................................................................................................... 7

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................................ 10

15 U.S.C. § 77b(a)(1) ............................................................................................................... 4, 7

15 U.S.C. § 77l(a)(1) ........................................................................................................... 4, 7, 10

15 U.S.C. § 77z-1(a) ............................................................................................................ passim

15 U.S.C. §§ 77e ....................................................................................................................... 4, 7

I.   **PRELIMINARY STATEMENT**

This litigation is a securities class action brought on behalf of a Class of all purchasers of $HAWK Tokens since November 26, 2024. The complaint alleges, among other things, that (a) the $HAWK Tokens are investment contracts and securities, as defined by Section 2(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77b(a)(1); (b) that a U.S. Securities and Exchange Commission ("SEC") required registration statement was never filed for $HAWK Tokens; and (c) that the defendants were "statutory sellers" of the $HAWK Tokens and violated Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e, 77l(a)(1) by selling, passing title, or soliciting the purchase of, $HAWK Tokens to the Class.

Class member Alexander Escobar ("Movant") respectfully seeks appointment as Lead Plaintiff in the action. Movant meets all the requirements of the Private Securities Litigation Reform Act ("PSLRA") for appointment as Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii). Movant timely filed this motion; believes he has the largest financial interest in the relief sought by the Class, having suffered a loss of $13,977 related to his purchase of $HAWK Tokens; and also satisfies the adequacy and typicality requirements of Rule 23.

Movant further requests that the Court approve his selection of Wolf Popper LLP and Burwick Law, PLLC to serve as Co-Lead Counsel for the Class. Wolf Popper is a nationally recognized securities litigation firm with a consistent record of achieving substantial recoveries for the benefit of injured investor classes. Burwick Law PLLC is a law firm focused on representing clients in issues related to digital assets, cryptocurrency, and securities law. Wolf Popper and Burwick Law have the expertise and resources necessary to provide high quality legal representation to the Class.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     The Defendants

Defendant Alex Larson Schultz ("Larson") promoted the sale of $HAWK Tokens online, including on X (formerly Twitter). Larson is a resident of Los Angeles, California. ¶ 17.

Defendant overHere Limited ("overHere") is a web3 developer that served as a launchpad for $HAWK Tokens and promoted the sale of $HAWK Tokens online, including on X. overHere is registered for business in Hong Kong. ¶ 18.

Defendant Clinton So ("So") is the founder and controller of defendant overHere. So personally promoted the sale of $HAWK Tokens online, including on X. So is a resident of Hong Kong. ¶ 19.

Defendant Tuah The Moon Foundation ("Tuah Foundation") received funds from the sale of $HAWK Tokens. The Tuah Foundation is registered and headquartered in the Cayman Islands. ¶ 20.

### B.     The Sale of $HAWK Tokens Is Alleged to Damage Investors

$HAWK Tokens are memecoins. Memecoins are digital assets that are issued leveraging existing blockchain technology. While functioning as tradable cryptocurrencies on blockchain networks, memecoins derive their primary appeal from their association with viral trends, social media phenomena, and celebrity endorsements. The term "memecoin" aptly reflects the reliance of these assets on cultural references and branding strategies that resonate strongly with online communities, serving as a tool to build awareness and attract participants. The speculative nature of memecoins, combined with their accessibility and liquidity, attracts participants seeking opportunities for financial gain in the volatile cryptocurrency market. *See, e.g.,* ¶¶ 21-32, 37.

---

[1] Unless otherwise noted, the factual background herein relies on the Complaint filed in this action (ECF No.1), and references to "¶_" are to the paragraphs of the Complaint.

Haliey Welch, known as the "Hawk Tuah Girl," rose to prominence following a viral video in June 2024. Following her viral moment, Welch amassed millions of followers across social media platforms such as Instagram, TikTok, and Snapchat. In September 2024, Welch launched the podcast "Talk Tuah with Haliey Welch," which quickly achieved significant popularity, ranking as high as No. 3 in podcast charts shortly after its debut. *See, e.g.,* ¶¶ 33-36.

From its inception, marketing of the $HAWK Token relied, among other things, on Welch's personal brand and influence to generate significant anticipation among her followers and the broader cryptocurrency community. ¶ 38. The $HAWK Token offered purchases new methods of engaging with Welch and the potential to integrate across her multiple social media platforms. ¶¶ 38, 49. $HAWK Tokens were also marked as an inclusive, yet innovative, project and new way for new crypto investors to engage with blockchain technology. ¶¶ 38-39, 45, 89. For example, promotional materials distributed by overHere on X (formerly Twitter) referred to Welch as the "internet's favorite meme queen," and that the $HAWK Token was not "just another token launch" but a memecoin "set to redefine the crypto space." ¶¶ 49, 88.

On November 26, 2024, the defendants launched a pre-sale of the $HAWK Token. ¶ 86. The pre-sale raised approximately $2.8 million, implying a market capitalization of all $HAWK Tokens of $16.69 million. ¶ 51. On December 4, 2024, $HAWK Tokens officially launched for public sale on the Solana blockchain. ¶ 50. $HAWK Tokens purchased in pre-sales were unlocked for sale during the December 4, 2024 launch. ¶ 52. $HAWK Tokens quickly gained traction, experiencing significant trading activity and a rapid increase in market capitalization. Within hours, the Token's market value surged to $491 million. ¶ 54. The success was short lived. Within hours, the market value of $HAWK Tokens fell over 90%. ¶ 58. According to the website

coinmarketcap.com, as of February 17, 2025, $HAWK Tokens currently have a per token valuation of approximately $0.00015 per token, and a market cap of approximately $11.2 million.[2]

      **C.**      **Defendants' Alleged Violations of the Securities Act**

The Complaint alleges that $HAWK Tokens are investment contracts and securities, as defined by Section 2(1) of the Securities Act, because they "involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946); *see also SEC v. Grybniak*, No. 20-CV-327(EK)(MMH), 2024 U.S. Dist. LEXIS 172840, at *16 (E.D.N.Y. Sept. 24, 2024). For example, investors made a monetary investment by purchasing $HAWK Tokens. ¶¶ 7, 51-54. A common enterprise existed, as evidenced by a sharing or pooling of the of investors' funds, and the fortunes of each investor in the pool being tied to one another and the fortunes and efforts of the defendants and Welch. ¶¶ 7, 69-81. The marketing campaign, led by defendants, created a reasonable expectation of profits among investors through statements like "Tuah to the Moon" and promises of redefining the crypto space. ¶¶ 7, 82-94. Further, on December 4, 2024, So said that $HAWK Token holders were essentially "shareholders." ¶ 64.

The Complaint alleges that $HAWK Tokens are unregistered securities. No required registration statement was ever filed for the $HAWK Tokens. ¶¶ 9, 108.

The Complaint alleges that the defendants violated Sections 5 and 12(a)(1) of the Securities Act and are liable to the proposed Class as they are statutory sellers of $HAWK Tokens in that they either (a) passed title or other interest in $HAWK Tokens for value to the Class, or (b) solicited the purchase of $HAWK Tokens for their own financial benefit through, among other things, public statements touting $HAWK Tokens and their potential for profit, as well as

---

[2] https://coinmarketcap.com/currencies/hawk/historical-data/

encouraging the purchase of $HAWK Tokens. *See, e.g.,* ¶¶ 106-114, 125-134; *see also Pinter v. Dahl*, 486 U.S. 622 (1988); *Oberlander v. Coinbase Glob. Inc.*, No. 23-184-cv, 2024 U.S. App. LEXIS 8200, at *3 (2d Cir. Apr. 5, 2024). For example, Tuah the Moon received funds from the sales of $HAWK Tokens, and overHere, So, and Larson launched, marketed, and promoted the sale of $HAWK Tokens online. ¶¶ 17-20, 45, 49, 50, 82-94.

Defendants marketed $HAWK Tokens to the market as a whole, and made no serious attempts to restrict purchases to non-American purchasers. Sales of the $HAWK Token took place in the United States. ¶¶ 63, 95-105.

### D. Procedural History

On December 20, 2024, this action was filed in this Court. Also on December 20, 2024, the PSLRA required notice of pendency (15 U.S.C. § 77z-1(a)(3)(A)(i)) was published on *ACCESS Newswire*, a national wire service, announcing that this securities class action had been filed against the defendants, and advising the putative class members that they may move the Court no later than 60 days from the date of the notice, or February 18, 2025 for appointment as Lead Plaintiff (the "Notice," Finkel Decl. Ex. 1).[3]

### III. ARGUMENT

#### A. Movant Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff

##### 1. The Lead Plaintiff Framework Under the PSLRA

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to

---

[3] Declaration of Finkel in Support of Alexander Escobar's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Finkel Declaration" or "Finkel Decl.").

8

as the 'most adequate plaintiff')." 15 U.S.C. § 77z-1(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that has either filed the complaint or made a motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)-(cc). The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)-(bb).

Movant satisfies each requirement of the PSLRA, and respectfully submits that he is the presumptive "most adequate plaintiff." Movant has complied with the PSLRA procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

### 2. Movant Has Satisfied the PSLRA's Procedural Requirements

Movant timely filed the instant motion seeking appointment as Lead Plaintiff for the Class and approval of his selection of lead counsel for the Class. Movant has also submitted the PSLRA required a sworn certification attesting to his willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. Finkel Decl. Ex. 2. Movant therefore satisfies the first element of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

### 3. Movant Has the "Largest Financial Interest" in the Relief Sought by the Class

The PSLRA states that the Court should award the most adequate plaintiff presumption to the movant who "has the largest financial interest in the relief sought by the class." 15 U.S.C.

9

§ 77z-1(a)(3)(B)(iii)(I)(bb). The PSLRA does not specify a method to determine which lead plaintiff movant has the largest financial interest, and neither the Supreme Court nor the Second Circuit have specified a method for the calculation. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 361 (S.D.N.Y. 2019) (citation and omitted) (applying PSLRA lead plaintiff analysis in case alleging sale of unregistered securities).

> Thus, courts in this district typically apply the four-factor test first adopted in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 12432, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), when making a determination as to which party has the largest financial interest. Those factors include: (1) number of shares purchased during the class period; (2) number of net shares purchased during the class period; (3) net funds expended during the class period; and (4) approximate financial losses suffered.

*Id.* (citation omitted); *see also Hunter v. Blue Ridge Bankshares, Inc.,* 346 F.R.D. 16, 24 (E.D.N.Y. 2024) (applying PSLRA lead plaintiff statute under the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4 *et seq.*), *Bensley v. FalconStor Software, Inc.,* 277 F.R.D. 231, 234 (E.D.N.Y. 2011) (Pollak, J.) (same).[4] "Most courts, however, emphasize the fourth factor — the approximate loss suffered." *FalconStor Software, Inc.*, 277 F.R.D. at 234.

Movant purchased 22,478,714 $HAWK Tokens for a total cost of $25,850, and sold all $HAWK Tokens for total proceeds of $11,873. Applying the Lax factors, Movant (1) purchased 22,478,714 $HAWK Tokens, (2) purchased 0 net $HAWK Tokens, (3) expended net funds of $25,850, and (4) suffered losses of $13,977, calculated as Movant's total cost, minus Movant's total sales proceeds. As damages under Section 12(a)(1) of the Securities Act are rescissory, the value of Movant's current holdings do not reduce his losses. 15 U.S.C. § 77l(a)(1) (the purchaser "may sue either at law or in equity in any court of competent jurisdiction, to recover the

---

[4] "[T]he relevant language of both versions of the PSLRA is identical, and courts use the same construction standards for PSLRA decisions arising under both the" Securities Act and the Exchange Act. *Ford v. VOXX Int'l Corp.*, No. CV 14-4183 (JS)(AYS), 2015 U.S. Dist. LEXIS 92705, at *4 n.1 (E.D.N.Y. Apr. 13, 2015), *adopted by* 2015 U.S. Dist. LEXIS 92646 (E.D.N.Y. July 16, 2015).

consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.").

Accordingly, Movant satisfies the second requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

### 4. Movant Satisfies the Typicality and Adequacy Requirements of Rule 23

A prospective lead plaintiff must satisfy the requirements of Rule 23. "In a PSLRA motion to appoint lead plaintiff, however, the Court considers only whether the proposed plaintiff has made a preliminary showing that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Blue Ridge Bankshares*, 346 F.R.D. at 24; *see also FalconStor Software, Inc.*, 277 F.R.D. at 234-35.

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Blue Ridge Bankshares*, 346 F.R.D. at 25 (citations and quotations omitted), *see also FalconStor Software, Inc.*, 277 F.R.D. at 235. Here, Movant's claims are typical of those of the purported Class. Movant, as did all members of the Class, purchased $HAWK Tokens that were unregistered securities in violation of the federal securities laws either from the defendants or as a result of the defendants' solicitations of the sale of $HAWK Tokens. Movant, and the Class, suffered damages as a result of the purchase of these unregistered securities. Because Movant's claims arise from the same course of events as the Class's claims, Movant satisfies the typicality requirement of Rule 23(a)(3).

In order for a lead plaintiff applicant to satisfy the adequacy requirement,

> there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

11

*Blue Ridge Bankshares*, 346 F.R.D. at 25 (citations and quotations omitted), *see also FalconStor Software, Inc.*, 277 F.R.D. at 235. Here, Movant is an adequate representative. Movant's claims are not antagonistic or in conflict with those of the Class. Movant is not subject to any unique defenses. Further, Movant's loss of $13,977 means he has sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, whose interests align directly with his own. As described below, Movant has retained Wolf Popper LLP and Burwick Law PLLC to act as Co-Lead Counsel, and the firms are experienced in securities, cryptocurrency, and digital asset litigation. Movant has submitted a sworn certification, as required by the PSLRA, attesting to his willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. Finkel Decl., Ex. 2. Movant has also submitted a declaration attesting to, among other things, his understanding of the obligations of a lead plaintiff and commitment to zealously prosecute this litigation. Finkel Decl., Ex. 3.

Because Movant's claims are typical of those of the Class and because Movant will adequately represent the Class, Movant satisfies the third requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).

### B. Movant's Selection of Wolf Popper and Burwick Law to Serve as Co-Lead Counsel Should Be Approved

Under the PSLRA framework, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Blue Ridge Bankshares*, 346 F.R.D. at 26 (citations and quotation omitted). Movant has selected Wolf Popper and Burwick Law to act as Co-Lead Counsel, and respectfully request that the Court approve its selection.

12

Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in its attached resume. *See* Finkel Decl., Ex. 4. For example, in *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF (S.D.N.Y.), Judge Katherine Polk Failla of the Southern District of New York appointed Wolf Popper to serve as lead counsel on behalf of a class of investors in AmTrust Financial Services preferred stock. On November 16, 2022, Judge Failla entered an order finally approving a $13 million cash settlement for the Martinek class. *Martinek*, ECF No. 111 (Final Judgment). Judge Failla also stated that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and securities class action litigation…." *Martinek*, 2022 U.S. Dist. LEXIS 209097, at *4 (S.D.N.Y. Nov. 16, 2022).

Also, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as lead plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, Judge Pamela K. Chen of this Court entered an order approving the settlement. The Court found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." *J.P. Morgan Acceptance Corp. I*, ECF No. 230 (Transcript) at 19:14-17. "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." *Id.* at 22:5-18.

13

Burwick Law is a New York City-based litigation firm focused on representing clients in actions related to digital assets, cryptocurrency, and securities law. Burwick Law has rapidly established itself as a leader in cryptocurrency litigation. Burwick Law has successfully represented hundreds of claimants in complex actions involving fraudulent token sales, nonfungible tokens (NFTs), and Ponzi schemes, including a $440 million staking-based Ponzi scheme. The firm's work has been featured in leading media outlets such as Law360 and Bloomberg Law, underscoring its reputation for navigating high-stakes litigation in the evolving digital asset space. Max Burwick brings a unique combination of technological expertise and legal acumen to his practice, focusing on protecting investors and consumers from fraud and regulatory violations. With a commitment to rigorous advocacy and client-centered service, Burwick Law leverages deep knowledge of securities regulations and blockchain technologies to hold violators accountable and secure meaningful recoveries for defrauded investors. *See* Finkel Decl., Ex. 5.

As a result of Wolf Popper's and Burwick Law's extensive experience in litigation involving issues similar to those raised in this action, they have the skill and knowledge to prosecute this action effectively and expeditiously. The Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the Class will receive the best legal representation available.

### IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court issue an Order appointing him as Lead Plaintiff and approving Wolf Popper and Burwick Law as Co-Lead Counsel.

| | |
|---|---|
| Dated: February 18, 2025<br>New York, NY | Respectfully submitted,<br><br>**WOLF POPPER LLP**<br><br>*/s/ Robert C. Finkel* |

14

Robert C. Finkel
rfinkel@wolfpopper.com
Chet B. Waldman
cwaldman@wolfpopper.com
Matthew Insley-Pruitt
minsley-pruitt@wolfpopper.com
Terrence Zhang (application for admission forthcoming)
tzhang@wolfpopper.com
Emer Burke
eburke@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600

Max Burwick (application for admission forthcoming)
max@burwick.law
BURWICK LAW, PLLC
43 West 43rd Street, Suite 114
New York, NY 10036
Telephone: (646) 762-1080

*Attorneys for Movant Alexander Escobar and Proposed Lead Counsel for the Class*

15

## WORD COUNT CERTIFICATION

Pursuant to Eastern District of New York Local Civil Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 3,242 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

                                                                         */s/ Robert C. Finkel*
                                                                            Robert C. Finkel