UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CARLOS RODRIGUEZ MENA,

                   Plaintiff,

     -against-                         **MEMORANDUM AND ORDER**
                                                      24 CV 8695 (ERK) (CLP)

ALEX LARSON SCHULTZ, *et al.*,

                   Defendants.
----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On December 20, 2024, plaintiff Carlos Rodriguez Mena ("plaintiff" or "Mena") commenced this class action individually and on behalf of others similarly situated against Alex Larson Schultz ("Larson"), overHere Limited ("overHere"), Clinton So ("So") and the Tuah The Moon Foundation ("Tuah") (collectively, "defendants"), alleging violations of Sections 5 and 12(a)(1) of the Securities Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77e(a) and 77l(a)(1). (ECF No. 1).

        On February 18, 2025, Alexander Escobar ("Escobar") filed a motion for appointment as Lead Plaintiff and to approve Wolf Popper LLP ("Wolf Popper") and Burwick Law as Co-Lead Counsel. (ECF Nos. 7-9). No other motions for appointment of Lead Counsel have been filed within the time set by the PSLRA and thus Escobar's motion is unopposed.

        Accordingly, at this time, the Court having considered Escobar's motion, and given the absence of any opposition to Escobar's appointment, the Court grants Escobar's motion for the reasons set forth below.

## FACTUAL BACKGROUND

On December 20, 2024, plaintiff Mena commenced this securities class action on behalf of a Class of all purchasers of $HAWK Tokens since November 26, 2024. (Compl.[1] ¶ 117). According to the Complaint, $HAWK Tokens are "memecoins" or digital assets that function as tradable cryptocurrencies on blockchain networks, and "derive their primary appeal from their association with viral trends, social media phenomena, and celebrity endorsements." (Id. ¶¶ 21-32, 37). It is claimed that the "speculative nature of memecoins, combined with their accessibility and liquidity, attracts participants seeking opportunities for financial gain in the volatile cryptocurrency market." (Escobar Mem.[2] at 5). According to the Complaint, the marketing of the $HAWK Token relied on the personal brand and influence of Haley Welch, known as the "Hawk Tuah Girl," who launched a viral video in June 2024 and a subsequent podcast in September 2024 that gained significant popularity. (Compl. ¶¶ 33-36, 38). Touted as a memecoin "'set to redefine the crypto space,'" the $HAWK Token offered purchasers ways of engaging with Welch and "the potential to integrate across her multiple social platforms." (Escobar Mem. at 6).

The Complaint alleges that the pre-sale of the $HAWK Tokens was launched on November 26, 2024, raising approximately $2.8 million, and on December 4, 2024, the $HAWK Tokens were launched officially for public sale. (Id. (citing Compl. ¶¶ 50, 51, 86)). According to the Complaint, the $HAWK Tokens experienced significant trading activity and an increase in market value to $491 million. (Id. (citing Compl. ¶ 54)). Within hours, however, the value fell over 90%, and as of February 17, 2025, the value of a token was approximately $0.00015, with a market cap of $11.2 million. (Id. at 6-7).

---

[1] Citations to "Compl." refer to plaintiff's Complaint, dated December 20, 2024 (ECF No. 1).
[2] Citations to "Escobar Mem." refer to the Memorandum of Law in Support of Alexander Escobar's Motion For Appointment As Lead Plaintiff and Approval of Selection of Lead Counsel, filed February 18, 2025 (ECF No. 8).

The Complaint alleges that $HAWK Tokens are investment contracts and securities as defined by Section 2(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), because they "'involve[] an investment of money in a common enterprise with profits to come solely from the efforts of others.'" (Escobar Mem. at 7 (quoting SEC v. W.J. Howey Co., 328 U.S. 293, 301 (1946))). However, no required registration statement was ever filed for $HAWK Tokens. (Compl. ¶¶ 9, 108). It is further alleged that defendants were "statutory sellers of the $HAWK Tokens," selling, passing title, or soliciting the purchase of $HAWK Tokens, in violation of Sections 5 and 12(a) of the Securities Act, 15 U.S.C. §§ 77e and 77l(a)(1). (Id. ¶¶ 106-114, 125-134).

Specifically, the Complaint alleges that defendant overHere is a web3 developer, founded by and controlled by defendant So, that served as a launchpad for $HAWK Tokens. (Id. ¶¶ 18, 19). It is alleged that defendants overHere, So, and Larson promoted the sale of $HAWK Tokens online, including on X, and the defendant Tuah received funds from the sale of $HAWK Tokens. (Id. ¶¶ 17-20, 45, 49, 50, 82-94). The Complaint further alleges that defendants marketed these tokens to the market as a whole and that sales of these $HAWK Tokens took place in the United States; it is further alleged that defendants made no serious efforts to limit the purchases to non-Americans. (Id. ¶¶ 63, 95-105).

The action was filed on December 20, 2024, and a notice of pendency was published in *ACCESS Newswire* on that same day, pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i). (Escobar Mem. at 8). The notice advised putative class members that they could move for the appointment of Lead Plaintiff on or before February 18, 2025. (Id.) Thereafter, Escobar filed the instant motion for appointment as Lead Plaintiff on February 18, 2025. No competing motions have been filed.

DISCUSSION

I. <u>Legal Standard</u>

"'Congress enacted the PSLRA in order to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" <u>Vladimir v. Bioenvision, Inc.</u>, No. 07 CV 6416, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 2007) (internal quotations omitted) (quoting <u>In re Bausch & Lomb Inc. Sec. Litig.</u>, 244 F.R.D. 169, 171 (W.D.N.Y. 2007), <u>opinion modified on denial of reconsideration</u>, No. 06 CV 6294, 2007 WL 3197318 (W.D.N.Y. Oct. 26, 2007)). Consequently, the PSLRA amended the Exchange Act by setting forth new procedures that govern securities class actions. <u>Weltz v. Lee</u>, 199 F.R.D. 129, 131 (S.D.N.Y. 2001).

The PSLRA provides that, within 20 days of the filing of the complaint, the plaintiff must issue a notice "in a widely circulated national business-oriented publication or wire service" that advises members of the proposed class "of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also inform members of the class that they can file a motion to serve as lead plaintiff no later than sixty days after the date on which the notice is published. <u>Id.</u>

The PSLRA also governs the appointment of lead plaintiff and lead counsel. It provides that "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i); <u>see also</u> <u>Schulman v. Lumenis, Ltd.</u>, No. 02 CV 1989, 2003 WL 21415287, at *3 (S.D.N.Y. June 18, 2003).

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the individual who: "(aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Foley v. Transocean Ltd., 272 F.R.D. 126, 127 (S.D.N.Y. 2011). This presumption may be rebutted only if a member of the class presents evidence that this plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The only Rule 23 requirements that must be met in PSLRA cases are typicality and adequacy. Reitan v. China Mobile Games & Entm't Grp., Ltd., 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014). In a motion such as this, the movant "need only make a 'preliminary showing'" that the adequacy and typicality requirements have been met. Schulman v. Lumenis, Ltd., 2003 WL 21415287, at *5 (quoting In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998), opinion adhered to on reconsideration sub nom. In re Olsten Corp., 181 F.R.D. 218 (E.D.N.Y. 1998)); see also id. (noting that "[a]ny preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party from contesting the ultimate class certification").

Finally, with respect to the selection of the lead counsel, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

II. Analysis

  A. Timing Requirements of the PSLRA

In this case, the Complaint was filed on December 20, 2024, and a notice of pendency was published in *ACCESS Newswire* on that same day. The notice advised putative class members that they could move for the appointment of Lead Plaintiff on or before February 18, 2025. *ACCESS Newswire* is a national press release dissemination company, which operates under several brands, including under *ACCESSWIRE*. See Access Newswire Inc., Annual Report (Form 10-K), F-11 (Dec. 31, 2024). Courts have found *ACCESSWIRE* to be a suitable publication for notice. Solomon v. Peloton Interactive, Inc., No. 23 CV 4279, 2023 WL 12053491, at *2 (E.D.N.Y. Sept. 7, 2023) (collecting cases). Thus, the notice requirement of the PSLRA is satisfied.

Moreover, within sixty days "after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). In this case, notice was published on December 20, 2024, and Escobar filed his motion for appointment of lead plaintiff on February 18, 2025. Therefore, given that Escobar filed his motion within sixty days of the notice's publication, the motion is timely.

  B. Financial Interest

As stated above, the movant must demonstrate that he has the largest financial interest in order to be presumed the most adequate plaintiff. Although the PSLRA does not define the term "largest financial interest," courts in this Circuit consider the following factors:

> (1) the total number of shares purchased (or sold) during the class period; (2) the number of net shares purchased (or sold) during the class period (*i.e.*, the difference between the number of shares purchased (or sold) and the number of shares sold (or purchased)); (3) the total net funds expended during the class period (*i.e.*, the difference between the amount spent to purchase shares and the

> amount received for the sale of shares during the class period); and
> (4) the approximate loss suffered during the class period.

See, e.g., Vladimir v. Bioenvision, Inc., No. 07 CV 6416, 2007 WL 4526532, at *4 (S.D.N.Y. Dec. 21, 2007). Courts have found that the fourth factor – amount of loss – is the most important factor. See id. at *5.

In this case, Escobar states that he purchased 22,478,714 $HAWK Tokens for a total of $25,850 and sold them for a total of $11,873, suffering losses of $13,977. (Escobar Mem. at 10). Escobar contends that he satisfies this element of the "'presumptively most adequate plaintiff'" analysis. (Id. at 11). Given that no one else has sought appointment of lead counsel or challenged Escobar's representations as to loss, the Court is not aware of any other movant that has suffered greater losses, and finds that Escobar has satisfied this requirement.

C. Typicality

In a PSLRA motion for appointment of lead plaintiff, the Court must determine that the proposed plaintiff has made a preliminary showing that he satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23. See Hunter v. Blue Ridge Bankshares, Inc., 346 F.R.D. 16, 24 (E.D.N.Y. 2024). A plaintiff's claims are typical of those of the proposed class when they arise "'from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Reitan v. China Mobile Games & Entm't Grp., Ltd., 68 F. Supp. 3d at 400 (quoting Canson v. WebMD Health Corp., No. 11 CV 5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011)).

Here, Escobar's claims arise from the same course of events from which the claims of the other Class members arise, in that Escobar purchased the $HAWK Tokens from defendants or based on defendants' solicitations; the $HAWK Tokens were unregistered securities, in violation of the federal securities laws; and he suffered damages as a result. (See Escobar Mem. at 11). Escobar's claims are based on the legal theory that defendants' conduct as alleged violated the

7

federal securities laws, which is the same theory alleged on behalf of the members of the class. Thus, Escobar has satisfied the typicality requirement.

D. Adequacy

The adequacy requirement of Rule 23 is satisfied when "'(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy.'" In re Sequans Commc'ns S.A. Sec. Litig., 289 F. Supp. 3d 416, 423 (E.D.N.Y. 2018) (quoting In re Symbol Techs. Sec. Litig., No. 05 CV 3923, 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006)).

Here, Escobar has a significant interest in the outcome of the litigation, given the financial loss he suffered. (Escobar Mem. at 12). In support of his motion, Escobar has provided a sworn Declaration, in which he states that he is 21 years old, has actively traded in securities, cryptocurrencies, and tokens for three years, and is currently pursuing a degree in Finance at Florida Atlantic University. (Finkel Decl.,[3] Ex. 3 ¶¶ 1-3). He contends that his claims are not antagonistic to those of the Class, nor is he subject to any unique defenses. (Escobar Mem. at 12). He has attested to his willingness to serve as Lead Plaintiff, to testify at deposition or at trial, his understanding of his obligations, and his commitment to prosecute the case zealously. (Id.; see also Finkel Decl., Ex. 3). Thus, Escobar has made a preliminary showing that he will be an adequate representative of the Class.[4]

---

[3] Citations to "Finkel Decl." refer to the Declaration of Robert C. Finkel, Esq., in Support of Lead Plaintiff Movant Alexander Escobar's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, filed February 18, 2025 (ECF No. 9).

[4] The Court notes that, given Escobar's age and experience, he is perhaps an untraditional lead plaintiff, especially since "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs." Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F. Supp. 3d at 396 (internal quotation marks and citation omitted). However, given that the claims here involve investments in "memecoins," which appeal to a less traditional investment market, and given that no institutional investor has moved to become lead plaintiff, the Court finds Escobar to be an adequate lead plaintiff.

With respect to counsel, Wolf Popper and Burwick Law have been selected by Escobar to act as Co-Lead Counsel. (Id.) Wolf Popper represents that it is "highly experienced" in securities and class action litigation, and has been appointed to serve as lead counsel in a recent case in the Southern District of New York. (Id. at 13 (citing Martinek v. AmTrust Fin. Services, Inc., No. 19 CV 8030 (S.D.N.Y.))). See also Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I, No. 08 CV 1713 (E.D.N.Y.) (PKC) (ECF No. 230) (finding the representation of Wolf Popper to be "obviously very vigorous"); (Finkel Decl., Ex. 4).

Co-counsel Burwick Law is a litigation firm specializing in actions related to digital assets, cryptocurrency, and securities law. (Escobar Mem. at 14; see also Finkel Decl., Ex. 5). According to Escobar, Max Burwick has a combination of technological expertise and legal acumen, and the firm has represented "hundreds of claimants" in complex actions involving nonfungible tokens ("NFTs") and Ponzi schemes. (Id. (citing Finkel Decl., Ex. 5)).

Based on the legal experience of the attorneys, particularly their extensive experience in similar cases, the Court concludes that the adequacy requirement has been met.

E. The Presumption Has Not Been Rebutted

In this case, Escobar submitted a declaration in which he represents that he is willing to serve as a representative in this matter, and agrees not to accept any payment for serving as a representative, beyond his pro rata share of any recovery. (See Finkel Decl., Ex. 2 ¶¶ 3, 7). Moreover, there have been no other parties seeking appointment as Lead Plaintiff nor any opposition voiced as to the appointment of Escobar. Therefore, the Court finds that Escobar is presumptively the most adequate plaintiff, and this presumption in favor of appointing him has not been rebutted. The Court therefore appoints Escobar to serve as Lead Plaintiff.

F.  Appointment of Lead Counsel

Plaintiff has also moved for the approval of Wolf Popper and Burwick Law to serve as Co-Lead Counsel.  As "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class," 15 U.S.C. § 78u-4(a)(3)(B)(v), the Court sees no reason to interfere in Escobar's selection of counsel here.  The Court has reviewed the biographies of the attorneys at the firms and surveyed their work in other securities cases.  Thus, the Court grants Lead Plaintiff's motion to appoint Wolf Popper and Burwick Law as Co-Lead Counsel in this case.

## CONCLUSION

In light of the foregoing, the Court appoints Alexander Escobar as Lead Plaintiff of the class.  The Court further approves Lead Plaintiff's selection of Wolf Popper and Burwick Law as Co-Lead Counsel.  Lead Plaintiff is Ordered to submit a status report on or before **May 7, 2025**.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
April 23, 2025

*Cheryl L. Pollak*

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York